**JASPER INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**DEALERS ELECTRICAL SUPPLY, Appellee.**

**No. 5838.**

Court of Civil Appeals of Texas, Waco.

Feb. 16, 1978.

Rehearing Denied March 16, 1978.

Charles E. Wallace, Wallace & Smith, Waco, Sid S. Stover, Jasper, for appellant.

John L. Bates, Waco, for appellee.

HALL, Justice.

This is a venue case involving subdivisions 5 and 29a of the venue statute.

Dealers Electrical Supply sold electrical equipment and supplies on an open account to G. L. & H., Inc., an electrical contractor. A part of the merchandise was delivered to the premises of Jasper Independent School District for installation by G. L. & H. on School District's buildings under a contract

between G. L. & H. and District, and stored in a room in one of District's buildings. G. L. & H. abandoned its contract with District before completion, and defaulted on payment of its account with Dealers.

Dealers brought this suit in McLennan County on a sworn open account against G. L. & H. and District to recover $13,289.54, the balance owed on the account, and for sequestration and sale of the supplies stored on District's premises. G. L. & H. is a resident of Angelina County, and District is a resident of Jasper County. G. L. & H. did not respond to the suit, but District filed a plea of privilege to be sued in the county of its residence. This is the only pleading by District in the record before us. Dealers controverted the plea of privilege, and asserted that the suit could be maintained in McLennan County (1) against G. L. & H. under the provisions of subdivision 5 venue statute (Article 1995, Vernon's Ann.Civ.St.), and (2) against District under the provisions of subdivision 29a of the venue statute. After a hearing without a jury the plea of privilege was overruled. District appeals. We affirm.

Subdivision 5 of article 1995 provides that if a defendant has contracted in writing to perform an obligation in a particular county, expressly naming the county or a definite place therein in the writing, then suit upon that obligation may be brought against the defendant in that county.

■ Subdivision 29a provides that if a suit with two or more defendants may be maintained under the provisions of article 1995 in the county where filed against any one of the defendants, then it may also be maintained there "against any and all necessary parties thereto." Our Supreme Court has ruled that a party is a necessary party within the meaning of this subdivision "if the complete relief to which plaintiff is entitled under the facts of the case as against the defendant properly suable in that county can be obtained only in a suit to which both defendants are parties." *Union Bus Lines v. Byrd*, 142 Tex. 257, 177 S.W.2d 774, 775 (1944).

District contends the record does not establish (1) that G. L. & H. agreed in writing to pay its account with Dealers in McLennan County as required by subdivision 5 of the venue statute, nor (2) that District is a necessary party to Dealers's suit against G. L. & H. within the meaning of subdivision 29a.

Dealers attached nine invoices to its petition and incorporated the invoices by reference in support of its sworn account. These invoices represent merchandise sold to G. L. & H. and delivered by Dealers to District's premises for use by G. L. & H. under G. L. & H.'s contract with District. Under "TERMS" printed on its face, each invoice contained the statement that it was, "Payable in Waco, McLennan County, Texas." Six of the nine invoices were signed by Mike Martin under the words, "Received By." Dealers expressly pleaded that "venue of this action is in Waco, McLennan County, Texas by virtue of written agreements forming a part of the contract with G. L. & H., Inc.,  . . .  wherein [G. L. & H.] by signed acceptance of merchandise from Plaintiff agreed that the invoices representing the merchandise were payable in Waco, McLennan County, Texas, as per the attached copies of invoices  . . ." The invoices are a part of the evidence in the case. The proof also shows that payments made by G. L. & H. on its account with Dealers were always made at Dealer's office in Waco, McLennan County, Texas.

■ The invoices containing written provisions for payment in McLennan County and signed by G. L. & H. were "contracts in writing to perform an obligation in a particular county" within the meaning of the venue statute. *Berry v. Pierce Petroleum Corp.*, 120 Tex. 452, 39 S.W.2d 824, 825 (1931); *Grimes v. Pure Milk & Ice Cream Company*, 527 S.W.2d 508, 510 (Tex.Civ. App.—Waco 1975, writ dism.). They support venue in McLennan County on Dealers's suit against G. L. & H. although all invoices upon which the suit is based were not signed by G. L. & H. *Warner v. Gohlman, Lester & Co.*, 117 Tex. 145, 298 S.W. 890, 891 (1927); *Kimbell, Inc. v. Baker*, 523

S.W.2d 956, 958 (Tex.Civ.App.—Fort Worth 1975, no writ).

District argues in its brief that the record does not show any relationship between the person named "Mike Martin" who signed the invoices and the parties to the suit. We disagree. District's business manager (who was also District's representative at the plea of privilege hearing) testified directly that the Mike Martin who signed the invoices "is a G. L. & H. man, he is not employed by us." As we have already shown, the execution of the invoices by G. L. & H., pleaded by Dealers, has not been denied. Rule 93, Vernon's Tex.Rules Civ.Proc., requires such denial to be made under oath in order to place it in issue.

The record shows that District determined to substantially renovate its school buildings. Believing it would save money by not employing a general contractor for the work, District chose to deal directly with the electricians, carpenters, plumbers and others who would make the repairs. It contracted with G. L. & H. for the electrical work.

G. L. & H.'s total contract with District was for $44,990.00, which included labor, fixtures and supplies. G. L. & H. bought the fixtures and supplies for this job (and others) from Dealers on open account. Under supervision of its architect, District permitted G. L. & H. certain "draws" as it completed the electrical work. G. L. & H. began the work in the Fall of 1976. On January 6, 1977, the architect approved $10,000.00 electrical materials and fixtures stored on the project site; and, based upon this, District paid G. L. & H. the sum of $7,434.16 on January 10th after deducting retainage. This left a balance of $12,800.00 not paid to G. L. & H. under its contract with District. The fixtures and materials for which this payment was made by District had been delivered to the job site by Dealers in the middle of December, 1976, for which G. L. & H. was billed $11,835.00 by Dealers.

On January 14, 1977, Dealers effected written notice to District by certified mail that G. L. & H. was indebted to Dealers for $13,289.54 for fixtures and supplies delivered to G. L. & H. for the renovation of District's buildings, and expressly stated in the notice that it was given "in compliance with the McGregor Act, Article 5160 as amended, of the Revised Civil Statutes of Texas." This statute provided at that time in its pertinent parts that any person or firm entering into a contract in excess of $15,000.00 with any school district for the repair of any public building "shall be required before commencing such work" to execute to the school district a payment bond in the amount of the contract for the protection of materialmen; and that after proper notice an unpaid materialman could sue the principal and sureties on the bond for the amount of his claim. District did not require such bond from G. L. & H.; however, Dealers did not learn of this fact until after it had given notice to District.

Dealers filed this suit on March 29, 1977. Ancillary to the suit, Dealers applied for a writ of sequestration on the ground that District was about to convert the fixtures and supplies sold to G. L. & H. which were stored on the job site. The application was not contested, the writ issued, and it was executed by the Sheriff of Jasper County who impounded the fixtures and supplies, and made return on the writ. On District's request at the hearing on the plea of privilege, a replevy bond was set in the amount of $12,174.00. The record does not show whether replevy was effected by District.

During the course of the plea of privilege hearing, District's business manager testified as follows: "Q. Do you presently still have $12,800.00 on hand [under your contract with G. L. & H.]? A. Yes, sir. Q. Is not the reason you still have $12,800.00 on hand based upon the fact you are withholding this money based upon this notice [under article 5160]? A. Oh, yes, sir. Q. Okay, you're withholding the money based on the notice of Dealers Electric of nonpayment? A. We informed the architectural firm at the time of the notice that we would not pay G. L. & H. any more payments until we had proof of payment. . . . Q. All right, do you have other bills unpaid besides

**554**

Dealers Electric? A. No. Q. Why is it that you are failing to pay Dealers Electric? A. We don't owe Dealers Electric. Q. Will you please state why? A. We have no contractual obligation with Dealers Electric. We have paid G. L. & H. for $10,000.00 worth of stored materials on the job which are identified by the architect and myself as being the light fixtures [in question] . . . . When we assumed that G. L. & H. had abandoned the contract, we re-bid it and got a $27,000.00 bid, using our fixtures that's in question."

At the time of the execution of the writ of sequestration and at the time of the hearing on the plea of privilege, the electrical fixtures and equipment in question were still in the original boxes in which they were shipped by Dealers, and were still in custody of the Sheriff. Insofar as the record shows, they are still in the Sheriff's custody. All of this merchandise was identified by Dealers, and pointed out to the officer executing the writ, as supplies sold to G. L. & H. by Dealers; and they were so identified on the trial. There is evidence that G. L. & H. was insolvent and had abandoned its contract with District before this merchandise was delivered to the job site, and that the merchandise was actually accepted there by District.

Provision is made in V.C.T.A., Bus. & C. §§ 2.401, 2.703 and 2.706 for resale of goods by the seller where the buyer wrongfully rejects or revokes acceptance of goods and they are identifiable to the contract of sale. In the case before us, Dealers seeks possession and resale of the electrical equipment in question which it sold to and intended to deliver to G. L. & H. on the job site on District's premises. It caused the property to be sequestered. District claims the merchandise as owner under an alleged purchase from G. L. & H. Questions are raised in the record as to whether G. L. & H. had abandoned the job at the time of the delivery and did not receive the merchandise. Under these circumstances we hold that within the meaning of subdivision 29a of the venue statute, District is a necessary party to Dealers's suit against G. L. & H. See *Moody Day Co. v. Westview National*

*Bank, Waco,* 441 S.W.2d 294, 296 (Tex.Civ. App.—Waco 1969, writ dism.).

The judgment is affirmed.